1

2   EMIL P. MILYAKOV
    MAGDALENA A. APOSTOLOVA
3   106 MADRID ST.                                          **FILED**
    SAN FRANCISCO, CA 94112
4   Telephone: (415) 218-4939                               JAN 1 0 2012
    Email: maggieSF@gmail.com
5
    PLAINTIFFS IN PRO PER                                   RICHARD W. WIEKING
                                                            CLERK, U.S. DISTRICT COURT
6                                                           NORTHERN DISTRICT OF CALIFORNIA

7                           **U.S. DISTRICT COURT**

8                   **NORTHERN DISTRICT OF CALIFORNIA**

9

10                                          )
                                            )
11  EMIL P. MILYAKOV;                       )   Case No.: 11-CV-2066-WHA
    MAGDALENA A. APOSTOLOVA                 )
12                                          )
                    Plaintiffs,             )
13                                          )   PLAINTIFFS' MEMORANDUM OF POINTS
    vs.                                     )   AND AUTHORITIES IN
14                                          )   OPPOSITION TO DEFENDANTS'
    JP MORGAN CHASE BANK, NA;               )   MOTION TO DISMISS
15  CALIFORNIA RECONVEYANCE CO.; PAUL )         SECOND AMENDED COMPLAINT
    FINANCIAL, LLC; MORTGAGE ELECTRONIC )
16  REGISTRATION SYSTEMS INC; MERSCORP, )      Date: Thursday February 2, 2011
    INC, ( COLLECTIVELY MERS);              )   Time: 8:00 a.m.
17  FOUNDATION CONVEYANCING, LLC; AND )         Location: San Francisco Courthouse
    DOES 1 THROUGH 100,                     )   450 Golden Gate Avenue,
18                                          )   San Francisco, CA 94102
                    Defendant.              )   Courtroom: 9 - 19th Floor
19                                          )   Judge: Honorable William Alsup
                                                Date Action Filed: April 20, 2011
20                                              Action Removed: April 27, 2011
                                                Trial Date: Not yet assigned
21

22

23

24

25

26

# Table of Contents
## Page 2

Table of contents … … … … … … … … … … … … … … … … … … … … … … .… …2

Table of Authorities … … … … … … … … … … … … … … … … … … … … … 3-4

    I. INTRODUCTION… … … … … … … … … … … … … … … … … … … …5

    II. FACTS … … … … … … … … … … … … … … … … … … … … … … 6

    III. THE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SAC IS FAR WEAK AND UNSUPPORTED IN DEFENCE TO THE EVIDENCED ALLEGATIONS OF THE PLAINTIFFS … … … … … … … … … … … … … … … … … … … … … … … … … … … … 8

    IV. PLAINTIFFS CHALLENGE THE ABBILITY OF MERS TO ASSIGN INTEREST IN A PROPERTY FOR ITS OWN COMPANY PROFIT … … … … … … … … … … … … … … …9

    A. PLAINTIFFS AGREED TO MERS IN THE DOT AS IN DEFINITIONS (E) AND PARAGRAPH "TRANSFER OF RIGHTS TO THE PROPERTY" P. 3 OF THE DOT … … … … …11

    B. DEFENDANT PREJUDICED THE FORECLOSURE ON OCT. 10, 2008, WHEN THEY FRAUDULENTLY PRESENTED THEMSELVES AS TRANSFEREE OF THE PLAINTIFFS' LOAN … … … … … … … … … …… … … … … … … … … … … … … … … … … … … ..14

    C. IRS TO CONFIRM CHASE BANK ANNUAL REPORT FOR THE PLAINTIFFS COLLECTION, IF CHASE DID NOT PROVIDE BUSINESS RECORDS OR AUDIT FROM A THIRD PARTY, (ECONOMICS 101) … … … … … … … … … … … … … … … … … ..16

    D. CAN A THIEF STEAL A PROMISSORY NOTE? OF COURSE, IF THE NOTE IS ENDORSED IN BLANK, UNDER UCC, SECTION 3205… … … … … … … … … … … 18

    V. DEFENDANTS HAVE TO EXPLAIN WHY MERS IS INVOLVED, WHO IS THE RIGHT PARTIES OF INTEREST OR SERVICING? THE PLAINTIFFS DO NOT CHALLENGE ANY SECURITIZATION OF THEIR LOAN, IT IS A FICTIONAL STORY OF THE DEFENDANTS… .. 20

    VI. UNFAIR COMPETITION (THE DEFENDANTS' CASE LAW IS MOSTLY UNPUBLISHED, THUS SHOULD NOT BE TAKEN UNDER CONSIDERATION) … … … … … ..22

    A. INJUNCTIVE RELIEF AND B. CAL. CIV. CODE 2923.5… … … … .… … … … 22

    B. DEFENDANTS MUST BE SANCTIONED AS HUMILIATE AND WASTE TIME TO THE JUDICIAL SYSTEM, in Re: Cal. Civil Codes and Rescissions of Foreclosures … … … … … 25

    C. QUASI CONTRACTS … … … … … .. … … … .. … … … … … … ... … … … … 25

    D. UNFAIR COMPETITION – FROM ORIGINATION TO THE TRUSTEE DEEDS … … .26

CONCLUSION … … … … … … … … … … … … … … … … … … … ……28

**Table of Authorities**
**Page 3**

**Cases**

*Ansanelli v. JPMorgan Chase*, 2011 WL 1134451. … … … … … … … … … … …- … … … 6
*Argueta v. Chase*, 2011 U.S. Dist. LEXIS 41300 (E.D. Cal. Apr. 11, 2011 … … … … … … ..16
*Banc of America Leasing & Capital, LLC v. 3 Arch Trustee Services, Inc.*, 103 Cal.Rptr.3d 397
Cal.App.4.Dist., 2009 … … … … … … … … … … … … … … … … … … … … … … … … ..24
*Bank of Italy*, 217 Cal. at 658 … … … … … … … … … … … … … … … … … … … … … 19
*Baker v. Kaiser Aluminum and Chemical Corp.*, 608 F.Supp. 1315 N.D.Cal.,1984 … … … …… … … ..26
*Barajas v. Anaheim* (1993) 15 C.AAth 1808, 1813, 19 C.R.2d 764 … … … … … … … … … … … … ..24
*Barker v. Riverside County Office of Education*, 584 F.3d 821, 824 (9th Cir. 2009)… … … … … … 25
*Boschma v. Home Loan Center, Inc.*, 198 Cal.App.4th 230 Cal.App.4.Dist.,2011 … … … … … … … … .25
*Born V. Koop*, 200 C. A. 2d 519[200 CalApp2d Page 527, 528] (1962) . … … … … …… . .. …12-13
*Cisco v. Van Lew*, 60 Cal.App.2d 575, 583-584, 141 P.2d 433, 438 . … … … … … … … … … .12-13
*Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal. 2d 284, 292 [267 P.2d 16] … … … … … … … … ...20
*Colm v. Francis* (1916) 30 Cal.App. 742, 752 …… … … … … … … … … … … … …....... … … … … 8
*Common Cause of Calif. v. Board of Supervisors* (1989) 49 C.3d 432, 439, 261C.R. 574, 777 P.2d 610.24
*Castaneda v. Saxon Mortgage Services, Inc.*, (E.D.Cal. 2009) 687 F.Supp.2d. 1191, 1201; … … .. … .. 18
*Carpenter v. Longan*, 83 U.S. 271, 274 (1872) … … … … … … … … … … … … … … …18,. .28
*Cervantez*, supra, 24, Cal.3d. 579 … … … … … … … … … … … … … … … … … … ….. 15-16, 17

Christopher Lewis Peterson, **Two Faces: Demystifying the Mortgage Electronic Registration System's
Land Title Theory"**, (September 19, 2010) … … … … … … … … … … … ...… … … … … … … … 9

*Deutsche Bank v. FDIC and Chase*, Case No.: 09-CV-1656-RMC … … … … … … … … … … … … .6
*Domarad v. Fisher and Burke, Inc.* (1969) 270 Cal. App.2d. 543, 553, … … … … … … … … … … . 18
*Dimock*, 81 Cal. App. 4th at 877 … … … … … … … … … … … … … … … … … … … … … … … 19
*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531) … … … … … … … … … … … … … … … …7
*DALLAS COUNTY, TEXAS v. MERSCORP, INC.; MORTGAGE ELECTRONIC REGISTRATON
SYSTEMS,INC.; ET AL, CIVIL ACTION NO. 3:11-CV-02733-O* … … … … … … ... … … … … … … 9
*Eleazar Salazar*, Bankruptcy No: 10-17456-MM13, So. District of California, April 11, 2011 … … 11
*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003 … … … … … … .. 18, …28
*FONTENOT v. WELLS FARGO BANK, N.A.* 198 Cal.App.4th 256, 273 (2011) … … … … 12 – 13, 16, 17
*Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) … … … … … … … … …24
*Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002… … … … … … … … … ... … … … … … .. 8
*Gomes*, 192 Cal. App. 4th 1149 (2011) … … … … … … … … … … … … … …… . … … … …... . … ... … ...11
*Harabedian v. Superior Court* (1961) 195 Cal.App.2d 26 … … … … … … … … … … … … … ...... … … … … … 23
*Haines v. Kerner*, 404 U.S. 519 (1972.) … … … … … … … … … … … … … … … … … … … … ...26
*Heiman v. Workers' Comp. Appeals Bd.* (2007) … … … … … … … … … … … … … … … … … 14
*I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281-285 [216 Cal.Rptr. 438, 702 P.2d 596]… 10
*Jensen v. Quality Loan Services Corp.*, (E.D.Cal. 2010) 702 F.Supp.2d. 1183, 1189 … … … … … …… 18
*Ibanez*, No. SJC-10694, 2011 WL 38071 … … … … … … … … … … … … … … ... … … … … … … …9
*Kayne v. Grande Holdings Ltd.* (2011) , Cal.App.4th [2d dist. 9/2/11] … … … …… … … … … …… 16
*Kang Jin Hwang*, 396 B.R. 757, 763 (Bankr.C.D.Cal., 2008) … … … … … … … … … … … … … … 20
*Kingman Holdings, LLC v. Citimortgage and MERS*, WL 1883829 (E.D. Tex.2011) … … … … … … … 23
*Lane v. Vitek Real Estate Industries Group* (E.D.Cal. 2010) 713 F.Supp.2d 1092, 1098 … … … … … …10
*Landmark National Bank v. Kesler*, in Kansas … … … … … … … … … … … … … … … … … … .... … 9

1 | *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000) … … … …… … … … … … … …9, . …26
   | *Lane v. Vitek Real Estate Industries Group* (E.D.Cal. 2010) 713 F.Supp.2d 1092, 1098 … … … … …10
2 | *Levine v. Blue Shield of California*, 117 Cal.Rptr.3d 262 Cal.App.4.Dist.,2010   … … … … … … …27
   | *Lewis v. Booth* (1935) 3 Cal.2d. 345, 349 … … … … … … … … … … … … … … … … … … … …18
3 | *Lloyd v. Williams*, 38 Cal.Rptr. 849 Formerly 95k4 Cal.App.4.Dist.,1964 … … … … … … … … …25
   | *Love v. Wolf* (1964) 226 Cal.App.2d 378, 403. … … …… … … … … … … … … … … … … …23
4 | *MERS v. NEBRASKA DEPARTMENT OF BANKING AND FINANCE No.*,S-04-786: (2005) …  … 11
   | *Macklin*, 2011 WL 2015520 Bankr.E.D.Cal.,2011 … … … … … … … …… … … … … … … 8, ..25
5 | *Morgera v. Countrywide Home Loans, Inc.* (E.D.Cal., Jan. 12, 2010, No. 2:09-cv-01476-MCE-GGH)
   | 2010 U.S.Dist. Lexis 2037, p. *22 … … … … … … … … … … … … … … … … … … … … … 14
6 | *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) … … … … … … … . 28
   | *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 [30 Cal.Rptr.2d 777 … … …   … … … … … ..10, 18
7 | *Matter of Staff Mortg. & Inv. Corp.*, 550 F.2d 1228 C.A.9.Cal.,1977.… … … … … … … … 19, … … 27
   | *Nelson v. Pearson Ford Co.*, 112 Cal.Rptr.3d 607 Cal.App.4.Dist.,2010 … … … … … … …… … … 26
8 | *Neptune Society Corp. v. Longanecker* (1987) 194 Cal.App.3d 1233 [240 Cal.Rptr. 117] … … … … .. 16
   | *Nool v. HomeQ Servicing*, (E.D.Cal. 2009) 653 F.Supp.2d. 1047, 1053; … … … … … … … … … …18
9 | *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983)… …  …  …  …  … … …8
   | *Residential Funding Co, LLC v Saurman* … …  . … …  … … … … … … … … … … … … … ....11
10 | *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F.Supp.2d 952 N.D.Cal.N.Div.,2010 … … …… … …26
   | *Roberts v. Ball, Hunt, Hart, Brown and Baerwitz* (1976) 57 Cal.App. 3d. 104, 109 … … … … … … … 14
11 | *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151 C.A.9.Cal.,1996 …… … … … …26
   | *Preis v. American Indemnity Co.* (1990) 220 Cal.App.3d 752, 761 [269 Cal.Rptr. 617] … … … …  …14
12 | *Schuh Trading Co. v. Commissioner of Internal Revenue*, 95 F.2d 404, 411 (1938)… …  … … …  … … 12
   | *Sipe v. Countrywide Bank*, 690 F.Supp.2d 1141 E.D.Cal.,2010 … … … … … … … … … … … … … 26
13 | *STATE OF DELAWARE, v. MERSCORP, Inc* … … … … … … … … … … … … … … …  .  … … … ... 9
   | *Smith v. Williams* (1961) 55 Cal.2d. 617… …  …  .  . …..  … … … … … … … … … … … … … … ...20
14 | *StorMedia, Inc. v. Superior Court* (1999) 20 Cal.4th 449, 457, fn. 9.… … … … … … … … … … … …23
   | *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) … …  …  …  …  …..  …  …  …  …  …  …  … … . ..18
15 | *Walker*, Case No. 10-21656-E-11… …  … …  …..  … …  …  …  … …  … … …  … … … … … … …9
   | *Venice Town Council v. Los Angeles* (1996) 47 C.Aath 1547, 1564, 55 C.R.2d 465 … … … … … … …24
16 | *Vargas*, 08-20302-BKC-JKO… …  … …  …..  … …  …  …  … …  … …  …..  …  … … … … … …9
   | *Vinhnee*, 336 B.R. 437. 444, (B.A.P. 9th circuit 2005) …  …  … … …  …..  … … …  … … … … … 16
17 | *Van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 571 [6 Cal.Rptr.3d 746].. … …… … 13
   | *Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir. 1996) …  …  … … … … …8
18 | *United States v. Catabran*, 836 F.2d 453, 457 (9th Cir. 1988.) … … … … … … … … … … … … … ..16
19 |
20 | Cal. Civ. Code 526(f), … … … … … … … … …  …  …  …  … …  … … … … …  …  …  … … …7
   | Cal. Civ. Code 2924 … … … … … … … … … …  … … … … … … … … … … …  …  …  …  …10
21 | Civ. Code, §§2304, 2305 … …  … … … … …  … … … … … … … … … … … …  …  …  … ..13
22 |
   | UCC, Articles 3 and 9 … … … … … … … … … … … … … … … … … … … … … … … .. … … 19
23 |
24 |
25 |
26 |

## I. INTRODUCTION

Plaintiffs EMIL P. MILYAKOV AND MAGDALENA A. APOSTOLOVA oppose Defendants' JPM CHASE BANK, N.A.; CALIFORNIA RECONVEYANCE CO.; and MERS' motion to dismiss Second Amended Complaint (SAC) on the grounds that the SAC contains sufficient facts to state plausible claims for relief. This is the second Motion to dismiss (MTD) and it will follow each and every time an amended complaint is filed.

This court converted the MTD the Plaintiffs' First amended complaint (FAC) into a motion for summary judgment, based on FRCP 12(c)(6) "failure to state a claim upon which relief can be granted;" giving the advantage of accepting as truthful the fraudulently manufactured and recorded assignment documents of the Defendants in the county land records. While a summary judgment motion shall be granted if all the papers submitted show that there is no triable issues as to any material fact by FRCP rule 56(a,) and in fact, this court ignored FRCP(c)(2.) Defendants' documents for judicial notice were not affidavit-ed in a form that would be admissible in evidence, (Cal. Code Civ. Proc., § 437c.) Generally, the Complaint should not be dismissed unless it appears that Plaintiff cannot prove facts that would entitle them to relief. This case has not had an opportunity to full disclosures and Plaintiffs suspect fraud which discovery will avail to this court, under FRCP, rule 9(b.)

Plaintiffs' factual allegations came in this court on April 27, 2011, along with the orders issued to Chase and thirteen other financial institutions the on April 13, 2011, by the Federal Reserve, the Office of Thrift Supervision (OTS), and the Comptroller of the Currency, under the same Consent Order Chase had sixty days to establish plans to clean up its mortgage-servicing processes to prevent documentation errors. Chase hired an independent consultants to conduct a "look back" of all foreclosure proceedings from 2009 and 2010, including Plaintiff's foreclosure, to evaluate whether Chase improperly foreclosed on any homeowners. (Plaintiffs' opposition to Defendants' MTD FAC, p.5)

Together with a reckless waste of time in hundreds of court rooms, intentionally misrepresenting themselves as a successor of interest of the defunct WAMU even with the risk to be thrown out of the

courts, fraudulent assignments, robosigning, backdating, etc... Defendant Chase when faced with their wrongdoings are quick to rescind any forged documents once submitted and claim why one would choose to litigate when there are no longer issues of a dispute. Defendants expect all parties including our justice system to render to the "mighty Bankers".

In this lawsuit the Defendants have violated the court order which directed the parties to meet, ignored the expedite discovery, and failed to comply with the discovery to satisfy Plaintiffs objectives, the Defendants are wasting time and resources of this court. Thus, the Defendants should be sanctioned, on more than one occasion as the Defendants requested judicial notice for documents in which they knew where false.

More important, this court relied on the truthfulness of Defendants and granted judicial notice in favor of Defendants causing the Plaintiffs great harm. The invalid documents, rescinded later, along with the misrepresentation of the Purchase and Assumption Agreement (PAA) between the Federal Deposit Insurance Corp. (FDIC) as a receiver of the defunct WAMU and Defendant Chase, as a purchaser of certain assets of the same (Defendants' RJN, Exhibit B, filed with this court on 12/27/2011).

Defendants continue to state their right as the proper party as the Successor-of-interest-for-WAMU relying on Plaintiffs inexperience as a Pro Per. This court should recognize that Defendants claims as successor of interest is also false, *Ansanelli v. JPMorgan Chase*, 2011 WL 1134451, Case No. CV10-03892 WHA.

Moreover, in regard to Defendant Chase and the FDIC are not in agreement of the relied upon PAA as is evident in the *Deutsche Bank v. FDIC and Chase,* Case No.: 09-CV-1656-RMC, in front of the Hon. Rosemary M. Collyer, partially as Exhibit A. The discovery in this matter is due May 11, 2012, in which one of the goals is to identify all loans in a possession of the defunct Washington Mutual at its closure on Sept. 25, 2008.

II.     FACTS

1    The Plaintiffs refinanced their home with Paul Financial, LLC in July of 2007, who formally

2    defunct as of November 28, 2008, Exhibit L, and has never been a MERS member. Soon after, the

3    servicing of the loan was allegedly purportedly transferred to WAMU. The bankrupted WAMU, that also

4    has never been a MERS member and thus, the non-recording of the beneficial interest of a non-member in

5    the County land violates statutory and MERS private company rights. Moreover, the delivered MERS'

6    Milestones report (Exhibit H) in this action shows no MERS member originator of the Plaintiffs'

7    obligation.

8    After two unaccepted 100% market value offers (which is an offer to tender) from the Plaintiffs to

9    refinance their residence, Defendant MERS, filed a fraudulent and/or forged Assignment of the Plaintiffs'

10   Deed of trust (DOT) on December 3, 2010 with signatory Ms. Colleen Irby without any affidavit of

11   personal knowledge or statement of a material fact. **_Ms. Colleen Irby is not an employee of Defendant_**

12   **_MERS or Chase, respectively, cannot sign under these companies._**

13   Also on December 3, 2010 there was a falsely recorded Substitution of trustee (SOT), with the

14   same signatory, employee of the still unrelated trustee, Exhibit F of the SAC, attached here again, (RFA

15   in discovery, request 3, admission of the employment of Ms. Irby, which presents all signs of

16   robosigning, violation of Cal. Civ. Code 526(f), as well as being a conflict of interest.) Because all

17   attempts to depose Ms. Irby were blocked, she's soon-to-be deposed in another action the Plaintiffs are

18   part of. "A [p]laintiff may allege on information and belief any matters that are not within his personal

19   knowledge, *if he has information leading him to believe that the allegations are true*'" (*Doe v. City of Los*

20   *Angeles* (2007) 42 Cal.4th 531, 550 [67 Cal.Rptr.3d 330, 169 P.3d 559],) and thus a pleading made on

21   information and belief is insufficient if it "merely assert[s] the facts so alleged without alleging such

22   information that lead[s] [the plaintiff] to believe that the allegations are true'" (*id.* At p. 551, fn. 5.)

23   Exhibit F in the SAC is a recent evidential admission of Defendant CRC that the signatory of the

24   assignment of DOT and the SOT, Ms. Colleen Irby, is not an employee of any of the companies in which

25   she signed for and the exhibit F includes public profile for the subject signatory, Ms. Colleen Irby.

26   The same day, Dec. 3, 2011, the Notice of default (NOD) was filed with an approximated

1  delinquent amount, which the Defendants did not provide an accounting for to the Plaintiffs in discovery.

2  Since any contract between WAMU and the Plaintiffs' loan was rejected by the FDIC and no record of

3  servicing or ownership of the Plaintiffs' obligation was on the accounting books of WAMU at the

4  moment of the bank's closing, Sept. 25, 2008, the Plaintiffs' alleges Defendant Chase is a unrelated third

5  party to their mortgage by Fed.Rules Civ.Proc.Rules 9(1)(A.) In Re: *Macklin,* 2011 WL 2015520

6  Bankr.E.D.Cal.,2011, In order to proceed with a deed of trust foreclosure under California law, creditor

7  must be entitled to payment on deed of trust note.

8        Plaintiffs allege that on this day, Dec. 9, 2010, the Defendants maliciously published wrongful

9  information in public records and have caused damages to Plaintiffs by stating that the Plaintiffs are in

10  default of paying their loan. Defendant Chase also "attached" fraudulent home mortgage account to the

11  credit history of the Plaintiffs, knowing all acts and statements were false, Exhibit B.

12

13  III.   THE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SAC IS FAR WEAK AND
        UNSUPPORTED IN DEFENCE TO THE EVIDENCED ALLEGATIONS OF THE
14      PLAINTIFFS

15

16        A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the complaint's

17  sufficiency. This is a seasoned federal practice. In Re: *North Star Int'l v. Arizona Corp. Comm'n,* 720

    F.2d 578, 581 (9th Cir. 1983). All material allegations in the complaint, "even if doubtful in fact," are
18
    assumed to be true. The court must assume the truth of all factual allegations and must "construe them in
19
    a light most favorable to the nonmoving party." *Gompper v. VISX, Inc.,* 298 F.3d 893, 895 (9th Cir. 2002);
20
    *Walleri v. Fed. Home Loan Bank of Seattle,* 83 F.3d 1575, 1580 (9th Cir. 1996). The court must accept as
21
    true all reasonable inferences to be drawn from the material allegations in the complaint. *Barker v.*
22
    *Riverside County Office of Education,* 584 F.3d 821, 824 (9th Cir. 2009). And "in passing upon the
23
    question of the sufficiency or insufficiency of a complaint to state a cause of action, it is wholly beyond
24
    the scope of the inquiry to ascertain whether the facts stated are true or untrue" as "[t]hat is always the
25
    ultimate question to be determined by evidence upon a trial of the questions of fact." (*Colm v. Francis*
26

(1916) 30 Cal.App. 742, 752.)

## IV. PLAINTIFFS CHALLENGE THE ABBILITY OF MERS TO ASSIGN PROPERTY FOR ITS OWN COMPANY PROFIT

Since the financial collapse, there have been hundreds of articles written regarding MERS, MERS has met nothing but controversially throughout the country. On the East Coast, and in states of judicial foreclosure, MERS continues to meet their proper position regarding property as not having standing, in Re: *Ibanez*, No. SJC-10694, 2011 WL 38071 (*Mass.* Jan. 7, 2011,) *Landmark National Bank* in Kansas, etc.

For academics works, see prof. Christopher Peterson, **"Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory"**, (September 19, 2010), available at: http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1684729 , the Texas Attorney General sued MERS on behalf of 122 (hundred and twenty two) counties, with paralegal David Kreiger, auditor of the Plaintiffs' obligation and title chain, as well an expert witness for this case, http://cloudedtitles.com/, to In Re: *Walker*, Case No. 10-21656-E-11 and In re: *Vargas*, 08-20302-*BKC*-JKO, "No such unidentified parties are permitted in a motion before the court," wrote Judge Samuel L. Bufford in October 2010, ruling kept the foreclosure on hold and opened the door for *Vargas* to sue MERS and sanction lawyers: *They were passing around the Deed Like it Was whiskey Bottle at a Frat Party*," to whole counties and states against MERS, in Re: *DALLAS COUNTY, TEXAS v. MERSCORP, INC.; MORTGAGE ELECTRONIC REGISTRATON SYSTEMS,INC.; ET AL, CIVIL ACTION NO. 3:11-CV-02733-O, and the STATE OF DELAWARE, v. MERSCORP, Inc.*, a Delaware corporation, and Mortgage Electronic Registration Systems, Inc., a Delaware Corporation, in the court of Chencery, Delaware; in Massachusetts, *COMMONWEALTH OF MASSACHUSETTS vs. BANK OF AMERICA, NA., BAC HOME LOANS SERVICING, LP, BAC GP, LLC, JPMORGAN CHASE BANK, N.A:, CITIBANK, NA., CITIMORTGAGE, INC., GMAC MORTGAGE, LLC, WELLS FARGO BANK, N.A., MORTGAGE ELECTRONIC REGISTRATION SYSTEK INC,, and MERSCORP, INC.*; and a dozen AG's in different states and recorders of deeds in Oklahoma, Pennsylvania, etc…

1    Controversially to the East Coast, MERS has been better accepted on the West Coast, although
2    still not an alternative to statutory foreclosure law. No case law has ever sustained execution of
3    documents out of agency, for its own profit, for Defendant MERS, as well the company recently changed
4    its internal policy to instruct its members not to foreclose on MERS' name, rule #8 is reachable by the
5    following link: http://www.mersinc.org/Foreclosures/index.aspx

6    Defendants quote the court in *Gomes* at p.4 of Defendants' MTD SAC, saying: "… the right to
7    determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would
8    fundamentally undermine the nonjudicial foreclosure process in California…" (shortened) and out of
9    context for this case before the court, the Defendants would like to emphasize only on the first part of the
10   sentence. The fact that a nominee CAN ACT ONLY if there is a principal is repeatedly ignored and in
11   *Gomes*, there is an active principal (agency) and the beneficiary of the DOT, unlike in the subject case
12   before this court. The same *Gomes* court acknowledges on the same page [192 Cal.App.4th 1155]:

13   California's nonjudicial foreclosure scheme is set forth in Civil Code sections 2924
14   through 2924k, which "provide a comprehensive framework for the regulation of a
     nonjudicial foreclosure sale pursuant to the power of sale contained in the deed of
15   trust." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 [30 Cal.Rptr.2d 777] (*Moeller*).)
16   "These provisions cover every aspect of exercise of the power of sale contained in a
     deed of trust." (*I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285 [216
17   Cal.Rptr. 438, 702 P.2d 596].) "The purposes of this comprehensive scheme are
18   threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient
19   remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from
20   wrongful loss of the property; and (3) to ensure that a properly conducted sale is final
     between the parties and conclusive as to a bona fide purchaser." (*Moeller*, at p. 830.)
21   "Because of the exhaustive nature of this scheme, California appellate courts have
22   refused to read any additional requirements into the non-judicial foreclosure statute."
     (*Lane v. Vitek Real Estate Industries Group* (E.D.Cal. 2010) 713 F.Supp.2d 1092, 1098;
23   see also *Moeller*, at p. 834 ["It would be inconsistent with the comprehensive and
24   exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another
25   unrelated cure provision into statutory nonjudicial foreclosure proceedings."].)

26

Plaintiffs' opposition to Defendants' JPMC Bank, NA; CRC; MERS motion to dismiss SAC
Emil Milyakov v. JP Morgan Chase, NA; et al.                                    Page 10

1    The nonjudicial foreclosure statutes are a "comprehensive" scheme designed **to protect the**

2    **debtor/trustor from wrongful loss of the property,** and this is exactly the focus of this lawsuit.

3    The Plaintiffs state, Defendant Chase cannot partially hide behind MERS' mask, as this does not

4    eliminate the Plaintiffs' option to bankruptcy.  Mercy for MERS will not be available from an eventual

5    bankruptcy trustee, in Re: *Eleazar Salazar, Case* no.10-17456-MM13, or in Re: *Rickie Walker Case* no.

6    10-21656 – E – 11, California bankruptcy cases typically disregard any and all strange and capricious

7    positions of legitimate-unknown parties with suspicious and/or invalid assignment transfers and declare

8    zero balance to unknown and un-evidenced pecuniary requests of the Defendants, SAC, p. 36, paragraph

9    144. MERS' lack of ownership interest in the promissory note is a matter of case law based on recorded

10   stipulations of MERS' own lawyers, thus, legal estoppel. In Re: *MERS, INC, v. NEBRASKA*

11   *DEPARTMENT OF BANKING AND FINANCE,* S-04-786, October 21, 2005, first, MERS argues that it

12   does not own the promissory notes secured by the mortgages and has no right to payments made on the

13   notes, second (used later,) "The district court went on to discuss the elements of the contract between

14   MERS and its members, referring specifically to a document entitled "Terms and Conditions," that states,

15   in part: The Member, at its own expense, shall promptly, or as soon as practicable, cause MERS to appear

16   in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the

17   Member registers on the MERS® System."

18

19   V.    PLAINTIFFS AGREED TO MERS IN THE DOT AS IN DEFINITIONS (E) AND
           PARAGRAPH "TRANSFER OF RIGHTS TO THE PROPERTY" P. 3 OF THE DOT

20
21   If Defendants claims that Plaintiffs dispute the relevance of MERS in their DOT, than they have

     not read the Plaintiffs' pleadings in its entirety. **Because MERS is a computer, i.e. hardware, machine**
22
     **or device, it does not provide loans and does not serve them, has zero employees, and operates by**
23
     **contracted third parties, therefore it cannot assign, transfer, or do anything by and for itself.**
24

25

26

When a borrower takes out a home loan, the borrower executes two documents in favor of the lender: (1) a promissory note to repay the loan, and (2) a deed of trust, or mortgage, that transfers legal title in the property as collateral to secure the loan in the event of default. State laws require the lender to record the deed in the county records in which the property is located. Any subsequent sale or assignment of the deed must be recorded in the county records, as well.

At the origination of the loan, MERS is designated in the deed of trust as a nominee for the lender and the lender's "successors and assigns," and as the deed's "beneficiary" which holds legal title to the security interest conveyed. If the lender sells or assigns the beneficial interest in the loan to another MERS member, the change is recorded only in the MERS database, not in county records, because MERS continues to hold the deed on the new lender's behalf. If the beneficial interest in the loan is sold to a non-MERS member, the transfer of the deed from MERS to the new lender is recorded in county records and the loan is no longer tracked in the MERS system. The original lender of the Plaintiffs' loan declared the loan was sold to a non-member WAMU. No assignment was recorded in the county land records at the time of the alleged sale, and MERS' Milestones report indicates FDIC as a servicer of the Plaintiffs' obligation for years, which was rejected by the FDIC and the Plaintiffs.

"In *Cisco v. Van Lew*, 60 Cal.App.2d 575, 583-584, 141 P.2d 433, 438., Cisco could not enforce the land sale contract because he was not a party to it, the court, at pages 583-584, said: "The word "nominee" in its commonly accepted meaning connotes the delegation of authority to the nominee in a representative or nominal capacity only, and does not connote the transfer or assignment to the nominee of any property in or ownership of the rights of the person nominating him." Also, see *Born V. Koop*, 200 C. A. 2d 519[200 CalApp2d Page 527, 528] (1962.) The court states, "In *Schuh Trading Co. v. Commissioner of Internal Revenue*, 95 F.2d 404, 411 (1938), the court stated: 'The word nominee ordinarily indicates one designated to act for another as his representative in a rather limited sense. It is used sometimes to signify an agent or trustee. It has no connotation, however, other than that of acting for another, in representation of another, or as the grantee of another.'

1    In Re: *FONTENOT v. WELLS FARGO BANK, N.A.* 198 Cal.App.4[th] 256, 273 (2011) the court

2    says: "There is nothing inconsistent in MERS being designated both as the beneficiary and as a nominee,

3    i.e., agent, for the lender," and we agree with that. "The legal implication of the designation is that MERS

4    may exercise the rights and obligations of a beneficiary of the deed of trust, a role ordinarily afforded the

5    lender, but it will exercise those rights and obligations only as an agent for the lender, not for its own

6    interests," a position that has been violated in the Plaintiffs' assignment of DOT.

7    In order **to protect the debtor/trustor from wrongful loss of the property,** on page 270 the

8    court in Fontenot clarifies:

9    While it is true MERS had no power *in its own right* to assign the note, since it had no
10   interest in the note to assign, **MERS did not purport to act for its own interests in**
     **assigning the note.** Rather, the assignment of deed of trust states that MERS was acting
11   as nominee for the lender, which *did* possess an assignable interest. A "nominee" is a
12   person or entity designated to act for another in a limited role—in effect, an agent. (*Born*
13   *v. Koop* (1962) 200 Cal.App.2d 519, 528 [19 Cal.Rptr. 379]; *Cisco v. Van Lew* (1943) 60
     Cal.App.2d 575, 583-584 [141 P.2d 433].) The extent of MERS's authority as a nominee
14   was defined by its agency agreement with the lender, and whether MERS had the
15   authority to assign the lender's interest in the note must be determined by reference to
16   that agreement. (See, e.g., *Van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4[th]
     549, 571 [6 Cal.Rptr.3d 746] [agency typically arises by express agreement]; *Anderson v.*
17   *Badger* (1948) 84 Cal.App.2d 736, 743 [191 P.2d 768] [existence and extent of agent's
18   duties are determined by the agreement between agent and principal]; Civ. Code, § 2315
19   [agent has such authority as principal confers upon agent].) Accordingly, the allegation
     that MERS was merely a nominee is insufficient to demonstrate that MERS lacked
20   authority to make a valid assignment of the note on behalf of the original lender.

21

22   The bankruptcy of both, Paul Financial as lender of record, and WAMU as an alleged consequent

23   owner of the Plaintiffs' obligation on December 3, 2010, when MERS "assigns" the beneficial interest to

24   Defendant Chase, was legally precluding MERS to exercise authority as an agent of the

25   lender/beneficiary, thus no assignment is valid by MERS for its own profit. In Re: *Fontenot v. Wells*

26   *Fargo Bank, N.A.* 198 Cal.App.4[th] 256, 273 (2011,) The court held that MERS had a right to assign the

1   note even though it was the beneficiary of the deed of trust only, because in assigning the note it was

2   acting on behalf of the beneficiary and not on its own behalf.

3       More to support, the transaction between MERS and Paul Financial is terminated with the

4   bankruptcy of the later on or around November 28, 2008, Exhibit L, and even if proven that WAMU, as a

5   transferee of the Plaintiffs' obligation, established expressed agency with MERS, which is not possible as

6   a non-member, no assignment by MERS is authorized after the bankruptcy of WAMU, either. In general

7   terms, an agent can be authorized to do any act the principal may do, (Civ. Code, §§2304, 2305; *Heiman*

8   *v. Workers' Comp. Appeals Bd.* (2007) 149 Cal.App.4[th] 724, 738 [57 Cal.Rptr.3d 56]; *Preis v. American*

9   *Indemnity Co.* (1990) 220 Cal.App.3d 752, 761 [269 Cal.Rptr. 617],) but not in the Plaintiffs' situation

10  when MERS acts for its own profit. In Re: *Morgera v. Countrywide Home Loans, Inc.* (E.D.Cal., Jan. 12,

11  2010, No. 2:09-cv-01476-MCE-GGH) 2010 U.S.Dist. Lexis 2037, p. *22, "MERS is the owner and holder

12  of the note as nominee for the lender, and thus MERS can enforce the note on the lender's behalf."

13  According to Cal. Civ. Code §2920, a mortgage is a contract and it is the controlling authority. The Civil

14  Code does not invalidate the Deed of Trust so that anybody out of the blue can take a home by foreclosing

15  on the loan. The core issue in this case is to ascertain who is the REAL Lender and who has the right to

16  foreclose.

17

18      B. DEFENDANT PREJUDICED THE FORECLOSURE ON OCT. 10, 2008, WHEN THEY
    FRAUDULENTLY PRESENTED THEMSELVES AS TRANSFEREE OF THE PLAINTIFFS' LOAN

19

20      Thereas, evidenced to this court in Exhibit C in SAC, Defendant Chase self-presented

    acquisition/transfer/purchase of the Plaintiffs' obligation in a letter, dated October 10, 2008. This

21
    fraudulent act confirms the conspired plan of the Defendant to foreclose on properties to the general

22
    public in which would not be questioned, since the appointment of the Defendant as a receiver of the

23
    bankruptcy WAMU. Defendant Chase, as to this date, has never publicly properly disclosed or accounted

24
    the loans and the servicing rights that were on the WAMU books at the moment of acquiring the whole

25
    bank; ie. inventory, branches, papers, pencils, advertisement, etc. In fact, this act of conspired prejudice

26
    could only be reached by fraudulent assignments and later, the essential acts of misrepresentation was

1    unavoidable, thus, knowledge of its falsity, intend to defraud, induce justifiable reliance, and resulting

2    damage, in Re: *Roberts v. Ball, Hunt, Hart, Brown and Baerwitz* (1976) 57 Cal.App. 3d. 104, 109, see

3    also Cal. Civ. Code, Section 1709, 1710.

4         Civil Code section 2924, subdivision (a)(1) states that a "trustee, mortgagee, or beneficiary, *or*

5    *any of their authorized agents*" may initiate the foreclosure process and if the original lender of record, if

6    Paul Financial, had not gone bankrupted, the formula of stealing the Plaintiffs' home would be successful.

7    MERS would not be questioned within agency of record, nor WAMU lack of membership to the MERS'

8    be researched, and there would be no need to subpoena the FDIC who rejected the acquisition of the

9    Plaintiffs obligation by Defendant Chase, including the right to collect.

10        Thus, the ostensibility of documents on record would be flawless, despite the organized

11   conspiracy hidden on the face of those documents. What other word is synonymous to prejudice as of

12   "intentionally stealing" as we do not have first degree stealing – calculated, designated, planned, pre-

13   considered, known, outlined-before-hand, purposeful, thoughtful, predesigned, premediated, proposed,

14   determined, decided, willful?

15        Mere "irregularities" would be the intelligent excuse for these technicalities, instead of just

16   "fraud", but the same irregularities are the tool only to reach the evil target – to steal homes the Defendant

17   does not own.

18        Moreover the ultimate example of prejudice, Defendants added another line of mortgage credit, to

19   the existing and disputed entries with Paul Financial, on the Plaintiffs' credit reports, doubled the

20   Plaintiffs' obligation and drastically reduced their debt to income ratio, cutting the Plaintiffs from all

21   services in connection with credit. Exhibit B. The Defendant Chase knew this act was harmful and that

22   fraudulent reporting would cause damage and that there was no validity to the entries they wrongfully

23   submitted to credit bureaus. Thus, Chase acted with intentions of causing, or with reckless disregard to,

24   create emotional distress. In Re: *Cervantez*, supra, 24, Cal.3d. 579. Thus, the Plaintiffs suffered illness,

25   job underperformance, stress in the family relationships, underperformance in their parenting obligations,

26   and extreme emotional distress, due to the lack of cooperation of the Defendants to postpone the

foreclosure sales and the necessity of filing a second individual action in the State court on October 4, 2011. Thus, the family of four with two minor children going everyday to school, and an elder mother-in-law, has been living in the fear of being thrown out into the streets since April 1, 2011. Defendant Chase has been trying to be creative how to wrongfully acquire Plaintiffs' nest. Defendant Chase acts were intentional and unreasonable to the Plaintiffs and they exceeded all bounds, usually tolerated by a decent society, knowing the commission of their acts were intentional wrongdoing/prejudice.

C. IRS TO CONFIRM CHASE BANK ANNUAL REPORT FOR THE PLAINTIFFS COLLECTION, IF CHASE DID NOT PROVIDE BUSINESS RECORDS OR AUDIT FROM A THIRD PARTY, (ECONOMICS 101)

Until this phase of the lawsuit, delivering 1982 pages paper mish-mash in discovery, mostly, out of order modification packages, previously declared as never received, (*Kayne v. Grande Holdings Ltd.* (2011), Cal.App.4th [2d dist. 9/2/11] $74,809 sanctions to cover costs of reorganizing documents produced in disorderly manner.) Defendant Chase had never provided two documents confirming one and the same source of acquisition of the Plaintiffs' obligation.)

Defendant Chase has never provided two documents confirming one and the same source of acquisition of the Plaintiffs' obligation. Most important, Defendant did not show an accounting of an annual IRS 10K form, nor any business records. In re: *Vinhnee*, 336 B.R. 437. 444, (B.A.P. 9th circuit 2005) states the requirements for qualification for business records: "Such records must be: (1) made at, or near the time by, or from information transmitted by, a person with knowledge; (2) made pursuant to the regular practice of the business activity; (3) kept in the course of the regularly conducted business activity; (4) the source, method, or circumstances of preparation must not indicate lack of trustworthiness." Also, see Fed. Rules of evidence 803(6), *United States v. Catabran*, 836 F.2d 453, 457 (9th Cir. 1988.)

The rights to collect is chained the same way as all other rights, in Re: *Fontenot*, "In contending the burden rested with MERS to demonstrate a valid assignment, plaintiff cites such cases as *Neptune Society Corp. v. Longanecker* (1987) 194 Cal.App.3d 1233 [240 Cal.Rptr. 117], which stands for the general principle that the party asserting a right under an assigned instrument bears the burden of

demonstrating the assignment... this may be a correct statement of law in an action to collect on an

assigned debt."

Defendants quote similarities with *Fontenot* case ( MTD SAC, p. 8,) "Might be in *Fontenot*, the

plaintiff confuses recording an assignment of a DOT with a sale of a Note," but in the subject lawsuit the

Plaintiffs do not confuse this at all, as there is no actual transfer/sale of the note.

In Re: *Cervantes*, CV-09-517-PHX-JAT, the court in the 9th circuit said:

**How MERS works**

> MERS is a private electronic database, operated by MERSCORP,
> Inc., that tracks the transfer of the "beneficial interest"
> in home loans, as well as any changes in loan servicers. After
> a borrower takes out a home loan, the original lender may sell
> all or a portion of its beneficial interest in the loan and change
> loan servicers. The owner of the beneficial interest is entitled
> to repayment of the loan. For simplicity, we will refer to the
> owner of the beneficial interest as the "lender." The servicer
> of the loan collects payments from the borrower, sends payments
> to the lender, and handles administrative aspects of the
> loan. Many of the companies that participate in the mortgage
> industry—by originating loans, buying or investing in the
> beneficial interest in loans, or servicing loans—are members
> of MERS and pay a fee to use the tracking system. (citation omitted)

> When a borrower takes out a home loan, the borrower executes
> two documents in favor of the lender: (1) a promissory
> note to repay the loan, and (2) a deed of trust, or mortgage,
> that transfers legal title in the property as collateral to secure
> the loan in the event of default. State laws require the lender
> to record the deed in the county in which the property is located.
> Any subsequent sale or assignment of the deed must
> be recorded in the county records, as well.

> **At the origination of the loan, MERS is designated in the
> deed of trust as a nominee for the lender and the lender's
> "successors and assigns," and as the deed's "beneficiary"
> which holds legal title to the security interest conveyed. If the
> lender sells or assigns the beneficial interest in the loan to
> another MERS member, the change is recorded only in the
> MERS database, not in county records, because MERS continues
> to hold the deed on the new lender's behalf. If the beneficial
> interest in the loan is sold to a non-MERS member, the
> transfer of the deed from MERS to the new lender is recorded
> in county records and the loan is no longer tracked in the
> MERS system.**

1    Since the alleged non-MERS-member WAMU paid the original lender of record, Paul Financial

2    (Exhibit D provided by the Defendants,) it is common sense that Plaintiffs' obligation does not belong to

3    a MERS-member society, and respectively, CANNOT be transferred by MERS.

4    Furthermore, no assignment of the DOT was recorded at the time of the transaction between Paul

5    Financial and WAMU; even worse for MERS, no transfer of the Note was recorded in the county land

6    records, and thus, **the Chain of Title and Obligation of the Plaintiffs' consequently are broken**. The

7    bogus MERS' Milestones report reviewed is coming up.

8

9    D. CAN A THIEF STEAL A PROMISSORY NOTE? OF COURSE, IF THE NOTE IS
     ENDORSED IN BLANK, UNDER UCC, SECTION 3205

10

11    California statutory law states nothing about the provision of original loan documentation in order

12    to proceed with nonjudicial foreclosure, Civ. Code 2924 through 2924(k), and *Moeller v. Lien* (1994) 25

13    Cal.App. 4th 822, 830-832, expressly mentioning the possession of or production of the note is a

14    prerequisite for initiating foreclosure. The opposite, numerous federal courts have held in the recent years

15    that possession of the note is not a requirement in initiating a nonjudicial foreclosure, *Nool v. HomeQ*

16    *Servicing*, (E.D.Cal. 2009) 653 F.Supp.2d. 1047, 1053; *Castaneda v. Saxon Mortgage Services, Inc.*,

17    (E.D.Cal. 2009) 687 F.Supp.2d. 1191, 1201; *Jensen v. Quality Loan Services Corp.*, (E.D.Cal. 2010) 702

18    F.Supp.2d. 1183, 1189.

19    When Defendant Chase ran out of "ideas" for a plausible scheme to steal Plaintiffs' home,

20    Defendant Chase brought an old piece of paper into court and purported it was the "original note" and

21    thus creating an obligation based on that document. This ol' piece of paper had no assignment to the

22    Defendant, had no date, delivery proof, nor value for purchasing it, of course, no accounting. In addition

23    there was no endorsement to the Defendant. Transfer of the note and the deed to follow, not vice versa.

24    *Carpenter v. Logan* 83 US 271 – 1873, *Domarad v. Fisher and Burke, Inc.* (1969) 270 Cal. App.2d. 543,

25    553, *Lewis v. Booth* (1935) 3 Cal.2d. 345, 349 ["A deed of trust is a mere incident to the debt it secures,

26

1  ... and an assignment of debt carries with it the security".] (Citations.) ["A lien is but incident of the debt

2  secured and cannot be transferred apart therefrom. A transfer of the debt carries with it the lien."]

3      As an adjustable rate mortgage (ARM) and especially the Negative amortization loans

4  Promissory Notes (Opt-Arm Notes) are not considered negotiable instruments, because their negotiations

5  are difficult, if not impossible due to the negative amortization payment.

6      Reviewing the Uniform Commercial Code (UCC,) there are no conditions to apply Article § 3-

7  102 in front of UCC § 9. SUBJECT MATTER of UCC, Article 3 says:

8  - (a) This Article applies to negotiable instruments. It does not apply to money, to payment orders
9     governed by Article 4, or to securities governed by Article 8.
   - (b) If there is conflict between this Article and Article 4 or 9, Articles 4 and 9 govern.
10

11  in front of UCC § 9 (2)

12  - This Article applies to security interests created by contract including pledge, **assignment,
   chattel mortgage, chattel trust, trust deed,** factor's lien, equipment trust, conditional sale, trust
13     receipt, other **lien or title retention contract** and lease or consignment intended as security.

14

15      Thus, after one year of negative payment options, a balance on an Opt-Arm note would be 5% or

16  more, higher than the amount on the note. Thus, WAMU fixed-rate contract with the Plaintiffs was

17  endorsed "3rd party" and not recorded in the county land records. Afterwords, WAMU defaulted on it by

18  bankrupting and thus breached their commitment to Plaintiffs. Exhibit E.

19      Since there is no assignment on the purported original papers, no transfer for value, no

20  endorsement to Defendant Chase, how do we find out the owner of a debt? Is Defendant Chase a

21  custodian, or in a possession of a stolen object? In Re: *Bank of Italy,* 217 Cal. At 658 (April 12, 2011,)

22  ("[I]mportant rights and duties of the parties should not be made to depend on the more or less accidental

23  form of the security; ") *Dimock,* 81 Cal. App. 4th at 877 ("[The title distinction] has been ignored in order

24  to afford borrowers with the protection provided to mortgagors. ")

25      In Re: *Matter of Staff Mortg. & Inv. Corp.,* 550 F.2d 1228 C.A.9.Cal.,1977. While the assignment

26  of collateral notes and trust deeds was recorded in county where land was located, and while this might

serve as notice to interested parties checking the county records, it was not sufficient notice to perfect a security interest in pledged instruments, nor was it the type of notice intended or provided by the Uniform Commercial Code. West's Ann.Com.Code, §§ 9304(1), 9305.

In *Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal. 2d 284, 292 [267 P.2d 16], our Supreme Court held: [4] "The burden of proving an assignment falls upon the party asserting rights thereunder [citations]. In an action by an assignee to enforce an assigned right, the evidence must not only be sufficient to establish the fact of assignment when the fact is in issue [citation] but the measure of sufficiency requires that the evidence of assignment be clear and positive to protect an obligor from any further claim by the primary obligee [citation]."

Without the necessary endorsement, the transferee still receives an enforceable interest – however, it's not enforceable against the issuer, rather, the enforceable interest is the specifically enforceable right to the unqualified endorsement of the transferor.  Addressing the same issue, the Court in the case of In re: *Kang Jin Hwang*, 396 B.R. 757, 763 (Bankr.C.D.Cal., 2008) stated "The transfer of a negotiable instrument has an additional requirement: the transferor must indorse the  instrument (to the transferee) to make it payable to the transferee."

Thereafter, because Defendant Chase did not provide the requested accounting of the collected funds, an action to remove the cloud would be needed, under Cal. Civ. Code 3412 that states: "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled," in Re: *Smith v. Williams* (1961) 55 Cal.2d. 617, and 5 Witkin, Cal. Procedures (5th edition, 2008,) Pleading, Section 671-674.  In this case, the Plaintiffs plead the purportedly called "original" debt documentation is not recognizable, and unless proven by delivery, it is void. The Plaintiffs pled that the Defendants are a unrelated party to their property be Fed.Rules Civ.Proc.Rules 9(1)(A,) and they owe nothing to this party.

V.    DEFENDANTS HAVE TO EXPLAIN WHY MERS IS INVOLVED, WHO IS THE RIGHT
      PARTIES OF INTEREST OR SERVICING? THE PLAINTIFFS DO NOT CHALLENGE
      ANY SECURITIZATION OF THEIR LOAN, IT IS A FICTIONAL STORY OF THE
      DEFENDANTS

1

2     The presented Exhibit G was an admission in discovery. RFA to Defendant Chase, was signed by

3 the Defendants' attorney of record, Selia Acevedo, without verification of the represented parties. Did

4 Ms. Acevedo forget what she signed for? RFA #17 - Admit Paul Financial, LLC sold the Plaintiffs'

5 Promissory note to WAMMSC; answer: ...after the general objections: ... *however Responding Party*

6 *directs Plaintiffs to the MERS Milestones report produced by Responding Party, which appears to reflect*

7 *that Paul Financial sold Plaintiff's loan to Bank of America, N.A. as Trustee for Washington Mutual*

8 *Mortgage Securities Corporation in or about August 2007.*

9     Print out as of October 6, 2011, in the1982 paper mish-mash production was the MERS'

10 Milestone Report, without disclosed log-ins for who the MERS' agents inputting the information were,

11 Exhibit H. The MERS' report is nothing but ONE BIG FAT PARADOX, and in view of the securitization

12 laws and assignments presents only a legal impossibility. This nonsense forgets that any Securitization

13 trustee must obtain good title to the loans comprising the pool for its certificate offering, including valid

14 transfer of the notes and DOTs. This is necessary for the trustee to enforce foreclosure in case of a

15 default. Although the purported Defendants' documentation has no endorsement to any securitization

16 trust, by the same source, Milestones report, Defendant Chase acquired the Plaintiffs' obligation on May

17 27, 2010 from BOFA as an investor. Discussion chronologically:

18     1.    Milestones report shows the Plaintiffs' loan registered on July 13, 2007 after origination with

19 servicer the original lender on file, Paul Financial, and UNKNOWN investor.

20     2.    On August 10, 2007, the report registers transfer of the beneficial rights with a new investor

21 BOFA, to a UNDICLOSED securitization trust. Unexpectedly, BOFA rejected any connection with it,

22 Exhibit I.

23     3.    On September 19, 2007, MERS registers transfer flow of servicing rights, with a new

24 servicer FDIC – Where on Earth is there a PSA (Purchase and servicing agreement) of the any

25 securitization trust that allows a government institution to serve a private trust? Did the Defendants

26 forget that FDIC has no memory of such a servicing, nor do the Plaintiffs. Exhibit J.

1      4.   And on March 3, 2009, the report shows the transfer of servicing rights to JPMC Bank. But

2   this Defendant had already been collecting the Plaintiffs' payments for six months, based on earlier sent

3   letter (10/10/2008, herein Exhibit C) in pretext of authority to have transferred/acquired/purchased the

4   Plaintiffs' obligation as a part of the acquisition of certain WAMU assets? How can MERS report show:

5      5.   On May 27, 2010 Defendant Chase, formerly known as WAMU, acquired the Plaintiffs' loan

6   as a new investor through the old investor's (BOFA) securitization trust.

7      On the second page of the report there is a statement – member is not associated with MIN

8   (mortgage identification number,) but it is unclear what member. Then, we read, foreclosure started,

9   assigned to servicer, again, unknown lender; and last we read servicer Chase, fka WAMU and investor

10   Chase, fka WAMU. Just two weeks before October. 6, 2011, when the report was generated, on

11   September 16, 2011, the MERS website did not show Defendant Chase as investor on the subject loan,

12   when the Plaintiffs' title chain was performed by DK Consulting, LLC. Exhibit K.

13      Please note, when you look up the batch numbers for the info inputting agents in the MERS

14   website, they all show… JPMCB, NA.

15      Plaintiffs do not allure any connection with securitization, it is the burden of the Defendants to

16   provide an evidential affidavit for time and occurrence of delivery, together with accounting and business

17   records for verification of the legally acquired Plaintiffs' obligation through the obfuscated by MERS

18   BOFA trust. A payoff of the loan is not determined to be done by the Plaintiffs/borrowers and third party

19   payments must be allocated. The DOT states in Paragraph 23:

20        "Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to
21        reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt
          secured by this Security Instrument to Trustee."

22

23        VI. UNFAIR COMPETITION (THE DEFENDANTS' CASE LAW IS MOSTLY
          UNPUBLISHED, THUS SHOULD NOT BE TAKEN UNDER CONSIDERATION)

24        A. INJUNCTIVE RELIEF AND B. CAL. CIV. CODE 2923.5

25

26      U.S. regulators posted a Cease and Desist order to Chase, signed on April 13, 2010, as the

Defendant needed to start investigation of its foreclosure procedures three months after the acquisition of

1   certain assets of the bankrupted WAMU through FDIC, this did not mean the Defendants complied with
2   the order.

3       Defendants are well armed in the art of gamesmanship and their initial strategy has failed even
4   though this court acknowledged judicial notices to documents in which they knew were false. Defendants
5   made the decision to rescind the Plaintiffs' foreclosure documents  because they under-estimated
6   Plaintiffs in pro per ability to expose them, so now they are seeking this court to go forward and give
7   them leave to manufacture new documents that comply with the 2923.5, (MTD SAC, p.12, l.4.)

8       Unfortunately, the rescinded NOD and NOS do not erase the fraudulently signed Assignment of
9   DOT and Substitution of trustee that has been judicially noticed.  While courts take judicial notice of
10  public records, they do not take notice of the truth of matters stated therein. (*Love v. Wolf* (1964) <u>226</u>
11  <u>Cal.App.2d 378</u>, 403.) "When judicial notice is taken of a document, . . . the truthfulness and proper
12  interpretation of the document are disputable." (*StorMedia, Inc. v. Superior Court* (1999) <u>20 Cal.4th 449</u>,
13  457, fn. 9 (*StorMedia*).)

14      Attempting to "self-assign" the Plaintiffs DOT does not allow enforcement of the note via
15  nonjudicial foreclosure as the process initiation has been confirmed fraudulently signed by unauthorized
16  robosigner of Defendant CRC in this case.  Exhibit F.  In Re: *Kingman Holdings, LLC v. Citimortgage*
17  *and MERS,* WL 1883829 (E.D. Tex.2011) the court denied a Motion to dismiss with similar causes of
18  action on the basis that the Plaintiffs have sufficiently challenged the signatory's authority. Ms. Colleen
19  Irby, with thirty long years of experience in the trustee industry, after one full year of community college
20  education, may need a medical check up, as she may not be able to recognize due to mental or physical
21  defects for which company she signs. In Re: *Harabedian v. Superior Court* (1961) 195 Cal.App.2d 26
22  (Defendant admitted at deposition to blurred vision and congenital defect in one eye.)

23      Hereas, without affidavit or personal declaration, which renders the judicially noticed documents
24  into hearsay, and as in Fed. Rules of Civ. Procedures 801, the declarant must provide "in evidence to
25  prove the truth of the matter asserted in the statement." Ms. Irby, an employee of the trustee gave herself
26  the initiative to assign DOT and SOT, as again, an employee of CRC while it was still an unrelated party,

1    unauthorized signed representations for MERS and Chase. In Re: *Banc of America Leasing & Capital,*

2    *LLC v. 3 Arch Trustee Services, Inc.,* 103 Cal.Rptr.3d 397 Cal.App.4.Dist., 2009. A trustee's or

3    beneficiaries fraudulent conduct, during foreclosure proceedings pursuant to a power of sale contained in

4    a deed of trust, can give rise to a tort action. West's Ann.Cal.Civ.Code § 2924 et seq.

5        Thus, by all means, until the clarification for the actions ultra vires or fraudulently by the

6    Defendants, preliminary and permanent injunction must be granted. C.C.P. 3422 (1), C.C.P. 526 (a)(4),

     see infra §294. C.C.P. 289 (b.) The proper pecuniary compensation would be extremely difficult to

7    ascertain. (C.C. 3422(2); C.C.P. 526(a)(5); see infra, §294.) The Defendants have nothing to loose, as

8    they did not invest a penny in the Plaintiffs' home, but the Plaintiffs would be deprived from their primary

9    residence for eight years, with their two minor children. Cal. Code, Section 274 says, where a plaintiff

10   has standing to have the underlying controversy adjudicated and the desired relief granted, no greater

11   interest is required to request the same relief on an interim basis. Thus, the plaintiff need not show a

12   separate basis for standing to obtain a preliminary injunction, distinct from his or her standing to seek

13   relief at a trial on the merits. *(Common Cause of Calif. v. Board of Supervisors* (1989) 49 C.3d 432, 439,

     261 C.R. 574, 777 P.2d 610; *Venice Town Council v. Los Angeles* (1996) 47 C.A 4th 1547, 1564, 55

14   C.R.2d 465) and thus a relief from enjoining the Defendants is sought until the legal standing of the

15   Defendants is proven.

16       The Supreme Court considered the admissibility of evidence of prior identification in Re: *Gilbert*

17   *v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) and this court to decide whether Ms.

18   Colleen Irby, as an employee of the trustee, and possible subsidiary of the Defendant Chase, can self-

19   assign the Plaintiffs' of DOT and a SOT in order to proceed with the foreclosure.

20       Chain of title is the ownership history of a piece of land, from its first owner to the present one.

21   Also termed line of title; string of title. 2. The ownership history of commercial paper, traceable through

     the endorsements. For the holder to have good title, every prior negotiation must have been proper. If a

22   necessary endorsement is missing or forged, the chain of title is broken and no later transferee can become

23   a holder. (Black's Law Dictionary 8th edition 2004 page 690).

24       Plaintiffs allege there was no legal transfer of the DOT. Thus, they do not rely on technicalities

25   as to the violation of the 2923.5 to the saving-of-their-home option. Plaintiffs are confident that they will

26   prevail at trial. Thereafter, failure to provide an injunction would cause irreparable harm. *(Barajas* v.

*Anaheim* (1993) 15 C.AAth 1808, 1813, 19 C.R.2d 764 [plaintiffs were entitled to seek injunctive relief against municipal ordinance that would result in loss of their livelihoods].)

### C. QUASI CONTRACTS

Since October 10, 2008, the psudo-servicer, Defendant Chase, has been collecting on the Plaintiffs' payments. In Re: *Baker v. Kaiser Aluminum and Chemical Corp.*, 608 F.Supp. 1315 N.D.Cal.,1984, Under California law, a valid express agreement precludes a contradictory implied contract embracing same subject matter, and such has never existed. Plaintiffs are unclear as on what ground the Defendant Chase calls themselves a servicer on the Plaintiffs' loan (MTD SAC, p.13, 1.24,) there has been no accounting delivered, and the employee of FDIC, Sam Williams, rejected this "role" in a conversation on Oct. 11, 2011, and in writing (evidenced,) of the fraudulent version for acquisition, "and an action on a implied contract cannot be maintained," in Re: *Lloyd v. Williams*, 38 Cal.Rptr. 849 Formerly 95k4 Cal.App.4.Dist.,1964. Unless Defendant Chase shows unbroken chain of servicing rights agreement, a restitution of all Plaintiffs' payments is due along with punitive damages. A transfer of the Note and the balance of the loan should be offset by third party payments and by the damages owed to the Plaintiffs by the Defendants. In Re: *Macklin,* 2011 WL 2015520 Bankr.E.D.Cal.,2011, In order to proceed with deed of trust foreclosure under California law, creditor had to be entitled to payment on deed of trust note.

In Re: *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151 C.A.9.Cal.,1996. Under both California and New York law, unjust enrichment is action in quasi-contract, which does not lie when enforceable, binding agreement exists defining rights of the parties.

The equitable doctrine of unjust enrichment applies where the Defendants, while having no enforceable contract, nonetheless has conferred a benefit on the Plaintiffs, which the defendant has knowingly accepted in circumstances in which it would be inequitable for the Defendant to retain the benefit without paying for its value. If Chase can show that it obtained "servicing interests" in Plaintiff's loan, then perhaps Chase can also prove that it actually forwarded payments from Plaintiffs to the beneficial owner of the loan. If Chase kept the money, it was unjustly enriched at Plaintiff's expense.

Plaintiffs have been contesting the demonstration of claim of title in support of their claim in SAC for unjust enrichment, the "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank,* 77 Cal. App. 4th 723, 726 (2000).

In the subject lawsuit, Plaintiffs have been requesting receipts and accounting since December of 2010 and have been scrutinizing the DOT and the promissory note, with no evidence that suggest "Chase" to be the proper party regarding subject property.

Finally, the Plaintiffs' have attempted to educate themselves in order to present proper motions before this court. Considering the above mentioned argument is aimed at getting to the truth please be liberal in allowing this matter to proceed towards trial and "hold[s] [the Plaintiffs' pleadings] to less stringent standards than formal pleadings drafted by lawyers," in Re: *Haines v. Kerner,* 404 U.S. 519 (1972.)

### D. UNFAIR COMPETITION – FROM ORIGINATION TO THE TRUSTEE'S DEEDS

Defendants' self-criticism would be appreciated much if applied before they manufactured documents to displace homeowners.

First, providing loans without "assisting" borrowers like the Plaintiffs with $8,000 monthly fabricated income, (*Nelson v. Pearson Ford Co.,* 112 Cal.Rptr.3d 607 Cal.App.4.Dist.,2010.) By proscribing unlawful business practice, Unfair Competition Law (UCL) borrows violations of other laws and treats them as unlawful practices that UCL makes independently actionable. West's Ann.Cal.Bus. & Prof.Code § 17200.) In Re: *Sipe v. Countrywide Bank*, 690 F.Supp.2d 1141 E.D.Cal.,2010; and in Re: *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F.Supp.2d 952 N.D.Cal.N.Div.,2010. Business practice may be "unfair or fraudulent," for purposes of California's unfair competition law (UCL), even if practice does not violate any law. West's Ann.Cal.Bus. & Prof.Code § 17200.

Second – without recording fraudulent robosigned assignments of DOT, Exhibit F in SAC; and third, maintaining high standards in the court rooms (not humiliating the courts and pro per litigants) and following civil procedures, starting with a Table of contents to the 1982 pages paper mish-mash production in a lawsuit.

The alter ego doctrine for joint liability theory applies for the contracted warehouse mortgage providers, ie. WAMU, and smaller brokers, like the originator on this loan, Paul Financial, LLC, and if

this court finds that the two mentioned above (and this will be proven at trial) were involved in a joint enterprise, than there is negligent damages as a fact to another by any one of the enterprisers such as negligence, fraud, breach of a contract made by the joint enterprise, then each of those who were part of the enterprise are liable for all damages to another. (Defendants MTD SAC, p.16, l.3) Since WAMU was given to Chase, "Under California law, lender may be secondarily liable for breach of fiduciary duty through actions of mortgage broker, who has fiduciary duty to its borrower-client, but only if there is agency relationship between lender and broker." The agency Paul Financial-WAMU will be proven at trial. In Re: *Levine v. Blue Shield of California*, 117 Cal.Rptr.3d 262 Cal.App.4.Dist.,2010. In order to state a claim for a violation of the Unfair Competition Law (UCL), a plaintiff must allege that the defendant committed a business act that is either. fraudulent, unlawful, or unfair. West's Ann.Cal.Bus. & Prof.Code § 17200.

Defendant Chase actions as of October 10, 2008, fraudulently self-presenting as an acquirer of Plaintiffs' servicing-obligation right is a deliberate act, but the wrong doing continues with reporting delinquency of the obligation to third parties, and worse, causing to be filed fraudulent foreclosure documents on the Plaintiffs' property. In Re: *Boschma v. Home Loan Center, Inc.,* 198 Cal.App.4th 230 Cal.App.4.Dist.,2011. Because the Unfair Competition Law (UCL) is written in the disjunctive, it establishes three varieties of unfair competition: acts or practices which are unlawful, or unfair, or fraudulent; in other words, a practice is prohibited as "unfair" or "deceptive" even if not "unlawful" and vice versa. West's Ann.Cal.Bus. & Prof.Code §17200. Chase knew the Plaintiff's loan was not on the books of WAMU on September 25, 2008, when Chase "acquired certain assets." Thus, Chase did not acquire a beneficial interest in Plaintiff's loan, respectively, misappropriated Plaintiff's payments and must make restitution.

All activities mentioned herein by Chase are violations of California Business and Professional code Sections § 17200 et. seq. Plaintiffs are aware some violations have expired statute, but they should be tolled upon the recent discovery of the violation, and especially since they demonstrate the well established practice of business conducted by the Defendans. Plaintiffs' request Defendants and their

attorney of record to call their own phone numbers and listen to the greeting "we are a debt collector",
respectively Rosenthal Act or Fair Debt Collection Act applies.

Moreover, in support of Plaintiffs claim for Unfair business, Plaintiffs request this court to
consider the properly filed Notice of related cases of the multi-plaintiffs' Complaint, filed in the Southern
Distinct of Florida on January 3, 2012, under the Florida Civil RICO Act, which perfectly illustrates the
deliberately repeated malpractice of the business conduct of the Defendants.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs in this case respectfully request that the Court deny
Defendant's Motion to Dismiss.

If any claims are insufficiently plead, Plaintiff requests leave to amend based on available
evidences and incoming responses to subpoenas from third parties, with or without court orders.

Where a motion to dismiss is granted, a district court should provide leave to amend unless it is
clear that the Complaint could not be saved by any amendment. *Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048, 1052 (9th Cir. 2003). The Ninth Circuit requires that this policy favoring amendment be
applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th
Cir. 1990.)

DATE *Jan. 10, 2012*

EMIL P. MILYAKOV

MAGDALENA A. APOSTOLOVA

IN PRO PER