IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EMIL P. MILYAKOV;
MAGDALENA A. APOSTOLOVA

    Plaintiffs,

  v.

JP MORGAN CHASE, N.A.; HSBC BANK USA, N.A.; CALIFORNIA RECONVEYANCE CO.; PAUL FINANCIAL, LLC; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; FOUNDATION CONVEYANCING, LLC; and DOES 1–100,

    Defendants.

                                       /

No. C 11-02066 WHA

**ORDER GRANTING
MOTION TO DISMISS**

## INTRODUCTION

In this foreclosure action, defendants move to dismiss. For the reasons stated below, the motion is **GRANTED**.

## STATEMENT

**1.**     **FACTS.**

Plaintiffs Emil Milyakov and Magdalena Apostolova, proceeding *pro se*, own real property in San Francisco. In July 2007, plaintiffs obtained a $650,000 loan from defendant Paul Financial, LLC to refinance their existing loan on the property. The loan was secured by a deed of trust that identified defendant Mortgage Electronic Registration System, Inc. (MERS)

as the beneficiary and defendant Foundation Conveyancing, LLC as the trustee (Second Amd. Compl. ¶¶ 13–14).

In August 2007, plaintiffs received a letter from Paul Financial informing them that the servicing of the mortgage loan had been transferred to Washington Mutual. Plaintiffs believe the loan "was then sold to an investment trust and became part of, or was subject to . . . a Collateralized Debt Obligation, a Mortgage Backed Security . . . a Credit Default Swap, and/or a Special Purpose Vehicle" (*id*. at ¶¶ 15–17).

In July 2008, plaintiffs entered into a loan-modification agreement with WaMu. At some point in October 2008, plaintiffs became aware that defendant JP Morgan Chase, N.A. had become the loan servicer, and plaintiffs began making mortgage payments to Chase. In a May 2009 phone conversation, a Chase representative told plaintiff Apostolova that Chase would not consider further modifying the loan terms as long as plaintiffs were current on their payments. Taking that advice, plaintiffs stopped payments in June of 2009 and hired an attorney to negotiate a modification (*id*. at ¶¶ 19–22).

In December 2010, MERS assigned Chase as the beneficiary of the deed of trust, and Chase substituted defendant California Reconveyance Company (CRC) as trustee. On December 9, CRC recorded a notice of default with the San Francisco Assessor. In March 2011, plaintiffs received a notice of trustee sale scheduled for April 1, which was subsequently rescheduled for May 3 (*id*. at ¶¶ 29–31, 37).

**2. PROCEDURAL HISTORY.**

Plaintiffs commenced the instant action in state court in April 2011 and defendants removed. Plaintiffs subsequently filed a first amended complaint, alleging that Chase did not legally own the loan, and thus had fraudulently received plaintiffs' mortgage payments. The complaint alleged claims for: (1) slander of title; (2) injunctive relief; (3) violation of California Civil Code Section 2923.5; (4) cancellation of deed; (5) wrongful foreclosure; (6) unjust enrichment; and (7) violation of California Business and Professions Code Section 17200.

2

An order dated September 2 stated the following: (1) defendants' motion to dismiss plaintiffs' first two claims was granted, with leave to amend; (2) defendants' motion to dismiss plaintiffs' third and seventh claims was denied; and (3) defendants' motion to dismiss plaintiffs' fourth, fifth, and sixth claims was converted into a motion for summary judgment under Rule 12(b)(6).

A December 1 order granted defendants' motion for summary judgment as to plaintiffs' fourth and fifth claims, but denied defendants' motion for summary judgment regarding plaintiffs' sixth claim. In filing their second amended complaint, plaintiffs did not amend as to their first claim. Accordingly, the following claims remain alive: (1) violation of California Civil Code Section 2923.5; (2) unjust enrichment; and (3) violation of California Business and Professions Code Section 17200. Defendants filed a motion to dismiss all claims on behalf of all parties except Paul Financial, LLC. Because the September 2 order converted the motion to dismiss the unjust enrichment claim into a motion for summary judgment, that claim will be viewed under the summary judgment standard.

### 3. REQUEST FOR JUDICIAL NOTICE.

Defendants request that judicial notice be taken of the following documents: (1) a deed of trust, recorded with the San Francisco County Recorder's Office on July 11, 2007; (2) a purchase and assumption agreement, executed between the FDIC and JP Morgan Chase Bank, National Association on September 25, 2008; (3) an assignment of deed of trust, recorded with the San Francisco County Recorder's Office on December 9, 2010; (4) a substitution of trustee, recorded with the San Francisco County Recorder's Office on December 9, 2010; (5) a notice of default, recorded with the San Francisco County Recorder's Office on December 9, 2010; (6) a notice of trustee's sale, recorded with the San Francisco County Recorder's Office on March 10, 2011; and (7) a notice of rescission, recorded with the San Francisco County Recorder's Office on December 9, 2010 (Dkt. No. 90).

Plaintiffs object that these documents do not satisfy the requirements of FRE 201 (Dkt. No. 111). These documents, however, are matters of public record not generally subject to dispute. Judicial notice of these documents is appropriate under FRE 201. Defendants'

request for judicial notice of these seven documents is **GRANTED**. *Bulaoro v. Oro Real Inc.*, 2011 WL 6372458, 11-03059 at *3 (N.D. Cal. Dec. 20, 2011) (Alsup, J.).

## ANALYSIS

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. FRCP 12(b)(6); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendants are liable for the misconduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 1949-50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claims, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show there exists a genuine issue of material fact. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

### 1. CALIFORNIA CIVIL CODE SECTION 2923.5.

Under California Civil Code Section 2924, a mortgagee may not file a notice of default unless the mortgagee first "contacts the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Under Section 2923.5, any notice of default must include a declaration stating that the mortgagee "has contacted the borrower, [or] has tried with due diligence to contact the borrower." The remedy for noncompliance with Section 2923.5 is postponement of the foreclosure sale. *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 235 (2010).

1  Plaintiffs' first amended complaint alleged that defendants violated Section 2923.5
2  "by failing to discuss with [p]laintiffs loan modification programs or other options to avoid
3  foreclosure" before filing a notice of default. The order dated September 2 held that plaintiffs'
4  complaint stated sufficient allegations to create a plausible inference that the defendants did
5  not fully comply with the Section 2923.5 requirements, and therefore denied defendants' motion
6  to dismiss this claim.

7  On November 10, 2011, defendants had the notice of default and notice of trustee's sale
8  rescinded (Chase Exh. G). The rescission was recorded on November 18 in the Official Records
9  of the County of San Francisco. Accordingly, there is no active notice of default pending,
10 and plaintiffs are not in foreclosure. Because Section 2923.5 provides the limited remedy of
11 postponement of a foreclosure before it happens and there is no foreclosure sale to be postponed,
12 as a practical matter defendants' motion to dismiss this claim is **GRANTED** without leave to
13 amend.

14 **2. UNJUST ENRICHMENT.**

15 Unjust enrichment involves the "receipt of a benefit and the unjust retention of the
16 benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).
17 Plaintiffs claim that Chase fraudulently told plaintiffs that it had acquired the loan from WaMu,
18 and then unjustly enriched itself by receiving plaintiffs' mortgage payments.

19 As noted, defendants' prior motion to dismiss the claim for unjust enrichment was
20 converted into a motion for summary judgment. The order denying defendants' motion for
21 summary judgment held that "[d]efendants have put forward no evidence to show that WaMu
22 held plaintiffs' loan at the time it allegedly sold it to Chase. Without knowing if Chase obtained
23 the note from WaMu, the order cannot determine if Chase was unjustly enriched by receipt of
24 plaintiffs' mortgage payments." Defendants needed to show that they owned the note through a
25 valid chain of title.

26 Defendants have now demonstrated a chain of title from Paul Financial to Chase.
27 In executing the deed of trust, plaintiffs expressly agreed that MERS was the beneficiary
28 and could assign the deed of trust to another party (Dkt. No. 90 Exh. A). Both plaintiffs

5

1 and defendants submitted a copy of the MERS Milestone Report, which is a matter of public
2 record. The report shows the transfer of servicing rights from Paul Financial to WaMu,
3 from WaMu to the FDIC, and from the FDIC to Chase (Opp. Exh. H; Reply Exh. B).
4 Chase is therefore the proper servicer and receiver of plaintiffs' loan payments.

5 The burden rests with the plaintiff to prove the invalidity of a MERS assignment.
6 *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 270 (2011). Under the summary
7 judgment standard, because plaintiffs bear the burden of proof at trial, defendants bear the initial
8 burden of producing evidence that negates plaintiffs' claim, which they have done by producing
9 the MERS Report. The burden then rests on plaintiffs to produce admissible evidence to show
10 that the MERS Report was invalid, which they have not done.

11 Plaintiffs contend that MERS was never the real beneficiary, and thus any subsequent
12 assignment of the deed of trust from MERS to any future party was void. Yet the deed of trust,
13 which plaintiffs signed, states that "[t]he beneficiary of this Security Instrument is MERS
14 (solely as nominee for Lender and Lender's successors and assigns) and the successors and
15 assigns of MERS." This is consistent with California law, which expressly contemplates
16 that a lender can designate a nominee to be the beneficiary of a deed of trust and permits the
17 recording of such instruments. CAL. BUS & PROF. CODE § 10234(a).

18 Plaintiffs also argue that MERS was merely a "nominee" of the original lender and, thus,
19 lacked authority to assign the deed of trust. This argument has been rejected by numerous
20 California courts of appeal. In *Fontenot*, the plaintiff alleged that "MERS lacked the authority
21 to assign the note because it was merely a nominee of the lender and had no interest in the note."
22 198 Cal. App. 4th at 271. The court found that such an allegation was "insufficient
23 to demonstrate that MERS lacked authority to make a valid assignment of the note on behalf
24 of the original lender." *Ibid*. The court noted:

> Even if MERS lacked the authority to transfer the note, it is
> difficult to conceive how plaintiff was prejudiced by MERS's
> purported assignment . . . Because a promissory note is a
> negotiable instrument, a borrower must anticipate it can and might
> be transferred to another creditor. As to plaintiff, an assignment
> merely substituted one creditor for another, without changing her
> obligations under the note . . . If MERS indeed lacked the
> authority to make such an assignment, the true victim was not

6

> plaintiff but the original lender, which would have suffered the unauthorized loss of a . . . promissory note.

*Id.* at 272.

As in *Fontenot*, transfer of the deed of trust merely substituted one creditor for another without changing plaintiffs' obligations to pay. If MERS's assignment was invalid, the true victim would be the current owner of the loan, who would have to file a claim against Chase.

Plaintiffs further argue that MERS's assignment is fraudulent because Paul Financial had ceased to exist by the time the deed was assigned to Chase. Yet plaintiffs acknowledge that Paul Financial sold the loan to WaMu shortly after origination. Thus, the existence or non-existence of Paul Financial at the time of assignment to Chase is irrelevant.

Plaintiffs also allude to the securitization of the loan by arguing that defendants have not shown that the assignment "was not barred by a cutoff date in the securitization documents." This argument holds no merit, as the deed of trust was assigned to "JP Morgan Chase Bank, National Association" only, and not to the trustee of a securitized trust (Dkt. No. 90 Exh. C).

At the February 23 hearing, plaintiffs questioned Ms. Colleen Irby's authority to sign both the assignment of the deed of trust as an assistant secretary of MERS and the substitution of trustee as an officer of JP Morgan Chase. After supplemental briefing on this issue, defendants have sufficiently shown that Ms. Irby, in the authorized and regular course of her duties with CRC, assigns deeds of trust on behalf of MERS and substitutions of trustee for JP Morgan Chase. Her authority as an assistant secretary of MERS is provided under the MERS Corporate Resolution, and she was given authority as an officer for JP Morgan Chase after being elected to the position of Vice President in August 2009. Both the MERS Corporate Resolution and the JP Morgan Chase Incumbency Certificate are attached as exhibits to Ms. Irby's declaration (Dkt. No. 130).

Under the summary judgment standard, defendants have sufficiently shown that Chase is the proper receiver of plaintiffs' loan payments. Summary judgment is therefore **GRANTED** in defendants' favor.

7

### 3. BUSINESS AND PROFESSIONS CODE 17200.

California Business and Professions Code Section 17200 defines unfair competition as "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by statute." Plaintiffs' Section 17200 claim is premised on three theories: (1) violation of Section 2923.5; (2) unjust enrichment; and (3) defendants' fraudulent actions in approving and underwriting the mortgage at origination. Plaintiffs' first two theories have been addressed and rejected above.

Plaintiffs allege that defendants fraudulently approved and underwrote the mortgage at the time of origination, knowing full well that plaintiffs could not afford it. Yet this claim cannot be considered because it is based on origination issues that relate solely to Paul Financial. As to any claims regarding the original signing of the mortgage agreement, plaintiffs may pursue relief from Paul Financial.

Accordingly, defendants' motion to dismiss this claim is **GRANTED** without leave to amend.

### 4. INJUNCTIVE RELIEF.

The order granting in part and denying in part defendants' initial motion to dismiss held that injunctive relief is not a claim for relief but rather "a remedy which must rely upon underlying claims. If plaintiffs seek injunctive relief, they should request it as part of their prayer for relief." Because plaintiffs' have not sufficiently alleged any claims for relief, injunctive relief cannot be granted.

### 5. OTHER CLAIMS.

In their second amended complaint, plaintiffs add claims for violations of the Truth in Lending Act, the California Residential Mortgage Lending Act, the California Rosenthal Debt Collection Practices Act, as well as numerous California Penal Codes. The order granting plaintiffs' leave to file an amended complaint stated:

> Plaintiffs were permitted to seek leave to file a second amended complaint only as to those claims dismissed in the order dated September 2. They were not permitted to add new claims or defendants. And the motion for leave to amend does not state any reason for plaintiffs' delay in adding new claims and defendants . . . [This] order does not find that justice requires

8

>allowing plaintiffs to make these amendments, after significant motion practice and discovery.

(Dkt. No. 83 at 2).

Accordingly, defendants' motion to dismiss these claims is **GRANTED** without leave to amend.

### 6. PLAINTIFFS' MOTION TO STRIKE AND DEFENDANTS' MOTION TO EXTEND TIME.

On December 28, 2011, plaintiffs filed a motion to strike defendants' motion to dismiss based on defendants' purported failure to timely file their motion to dismiss. The same day, defendants filed a motion to extend time on the grounds that their motion to dismiss was timely filed on December 27 pursuant to Rules 15(a)(3), 6(a)(1)(C), and 6(d). After reviewing the pleadings from both parties, this order **GRANTS** defendants' motion to extend time and **DENIES** plaintiffs' motion to strike.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss all claims is **GRANTED** without leave to amend, as such an exercise would be futile.

**IT IS SO ORDERED.**

Dated: March 15, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9